IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARTER FITNESS OF RIO RANCHO LLC,
CHARTER FITNESS OF SKYVIEW LLC,
CHARTER FITNESS OF FAR NORTH LLC, and
PETER J. VRDOLYAK III,

           Plaintiffs/Counter Defendants,

v.                                          CIV 12-0365 RB/KBM

MAXREP LLC,
BILL RODWAY, individually,

           Defendants/Counterclaimants

  -and-

J.B. PRIVITT, individually,

           Defendant in Default.

## <u>PROPOSED FINDINGS & RECOMMENDED DISPOSITION</u>

Presiding District Judge Robert Brack referred this matter for, among other things, recommendations on dispositive issues.  *See Doc. 2.*  It is presently before the Court on Plaintiffs' motion to dismiss counterclaims by Defendant/Counterclaimant Maxrep LLC, *see Doc. 6.*  Plaintiffs also filed a motion to dismiss counterclaims filed by Defendant/Counterclaimant Bill Rodway, but that motion will not be ripe until later this summer due to the parties' mutually-agreed upon extension of time for a response.  *See Docs. 20, 22, 23, 24.*  I recommend that the present motion be granted in part.  For the sake of efficiency, I further recommend that, in the event these findings are adopted, the Court summarily rule on the identical issues raised in the unripe motion.

# I.  Factual & Procedural Background[1]

All of the Charter Fitness entities are Illinois companies that owned and operated three physical fitness facilities in Albuquerque, New Mexico.  For ease of reference, these proposed findings refer to the entities collectively as "Charter Fitness."  Vrdolyak is deemed to be a citizen of Illinois, and he personally guaranteed the New Mexico real estate and equipment leases through which the facilities operated.

Privitt, a New Mexico resident, was associated with Charter Fitness, though his capacity is in dispute.  Rodway, also a New Mexico resident, was a member of one of the facilities.  Privett approached Rodway in March or April 2011 with the proposition that Rodway purchase the three facilities.  Rodway acting on his own behalf and without an attorney, Privitt, and Charter Fitness representatives negotiated the purchase.  Based on monthly income projections provided by Privitt, Rodway anticipated a combined annual profit of more than $300,000 a year from the businesses.  He made an initial payment of $52,500.00 toward the $525,000.00 purchase price.  On June 15, 2011, Rodway also formed Maxrep, a New Mexico company owned solely by him, for the purpose of purchasing the Charter Fitness' assets.

The sale became final on July 1, 2011, with the "Asset Purchase Agreement" drafted by Charter Fitness.  Among other things, Maxrep purchased the assets, assumed the leases, and agreed to have Vrdolyak released as guarantor for certain leases.  Charter Fitness represented that it was conveying good title except for

---

[1] Unless otherwise noted, the background facts are based collectively on the complaint filed in state court, and the answers and counterclaims filed in this Court.  *See Doc. 4-1* (Verified Complaint filed by Charter Fitness and Vrdolyak in the Circuit Court of Cook County, Illinois County Department, Chancery Division, No. 11CH36729 on October 21, 2011); *Doc. 4* (Answer & Verified Counterclaim filed by Maxrep December 12, 2012); *Doc. 20* (Answer & Verified Counterclaim filed by Rodway May 16, 2013).

"permitted liens" which included taxes that were "not yet due and payable."   It in fact
owed $119,884.70 in taxes to New Mexico for 2009.

After the purchase, things quickly turned sour for Rodway, in part because the
estimated income did not materialize, and in part because he came to believe the
purchase price had been inflated.  Maxrep also was unable to obtain release of
Vrdolyak as guarantor.  With Maxrep in financial difficulties, to keep equipment leases
from defaulting, Vrdolyak paid $30,000.00 on leases that Maxrep failed to pay in
September and October.  Vrdolyak also received notice of default and a demand for
$18,620.15 in rent from one of the property-lease agents.

The parties' legal controversy began on October 21, 2011, in Illinois state court
when Charter Fitness and Vrdolyak filed a complaint for breach of contract, fraud, and
imposition of a constructive trust against Maxrep, Rodway, and Privitt.  Maxrep filed for
Chapter 11 bankruptcy in the District of New Mexico on October 26, 2011,[2] removed the
state case to the United States Bankruptcy Court for the Northern District of Illinois on
December 9, 2011, and asked it to transfer the case to New Mexico.[3]  Several months
later, and with the agreement of the parties, the Illinois bankruptcy court transferred the
case, noting that the parties intended to withdraw the bankruptcy reference following
transfer.  When the parties subsequently stipulated to withdraw the bankruptcy
reference, the case began as a civil action in this court under the present caption.[4]

---

[2] *See In re Maxrep LLC,* Bankr. Petition # 11-14665 (D.N.M. Bankr.) (docket sheet available electronically).

[3]  *See Charter Fitness of Skyview LLC , et al. v. Maxrep, et. al.,* Adversary Proceeding #11-02591 (N.D. Ill. Bankr.) (Docs. 1, 10) (docket sheet available electronically).

[4] *See id.* (Doc. 20); *see also Charter Fitness of Rio Rancho LLC, et al. v. Maxrep, et. al.,* Adversary Proceeding #12-01160 (D.N.M. Bankr.) (Doc. 8 and docket sheet available

Their agreement to withdraw the reference modified the bankruptcy stay "to allow the Parties to proceed with any and all of their claims" here.  *Doc. 3* at 2.

The counterclaims raised by Maxrep and Rodway are virtually identical word-for-word, and are indistinguishable substantively.  Both are based on the same underlying events.  *See Doc. 4* at 11-15; *Doc. 20* at 12-17.  Both seek damages or, alternatively, rescission and return of the purchase price.  Both contain these identical seven claims: (1) unjust enrichment Charter Fitness' and Vrdolyak's receipt of an purchase price that exceeded the fair value of the assets and rights Maxrep received; (2) fraudulent, or at least (3) negligent, misrepresentation of financial condition of Charter Fitness; (4) fraudulent concealment or at least (5) negligent nondisclosure of the unpaid taxes that Maxrep would be assuming; (6) treble damages for violation of the New Mexico Unfair Trade Practices Act, N.M. Stat. Ann., § 57-12-1 et seq. for the false and misleading statements; and (7) imposition of a constructive trust against Vrdolyak's assets in the amount of the contract sales price, $525,000.00.  *See Doc. 4* at 17-23; *Doc. 20* at 17-23.  Maxrep's counterclaim raises two initial additional claims:  breach of contract and breach of the duty of good faith and fair dealing.  As such, the count numbers for Maxrep's and Rodway's identical claims are not the same.

Early in the proceedings, Charter Fitness and Vrdolyak filed their motion to dismiss four of Maxrep's counterclaims – breach of the duty of good faith/fair dealing, fraudulent misrepresentation, fraudulent concealment, and the New Mexico Unfair Practices Act.  *See Doc. 6.*  Thereafter, the Clerk entered default against Rodway and Privitt, *see Doc. 18.*  When Judge Brack set aside the default against Rodway, he had already filed his counterclaim.  *See Docs. 20, 21.*  Thereafter, Plaintiffs recently moved

electronically); *Docs. 1, 3.*

to dismiss three of Rodway's counterclaims.  That motion seeks to dismiss the same counts Plaintiffs' raised in their Maxrep motion – Rodway's fraudulent misrepresentation, fraudulent concealment, and New Mexico Unfair Practices Act counterclaims.  *See Docs. 2, 23, 24.*

## II.  Analysis

Plaintiffs recite the Rule 12(b)(6) standard for a motion to dismiss, the Rule 9(b) standard for sufficient allegations of fraud, and the contractual "choice of law" provision for the proposition that Illinois law applies to every counterclaim.  *See Doc. 6* at 1-2. Maxrep recognizes well-settled standards under the federal rules, but argues that federal choice of law principles displace the contractual choice of law provision here.  It contends that New Mexico generally applies the "place of the wrong" as the governing law, and that the applicable place is New Mexico because of the significant underlying actions that took place here.  *See Doc. 9* at 2-3.  Plaintiffs reply that New Mexico law will honor a contractual choice of law provision. *See Doc. 12* at 2-3.

### A.  Illinois Law Governs The Breach Of "Contract" Claims And New Mexico Law Governs The "Tort" Claims

The Agreement provides:

> **8.6 Controlling Law; Amendment; Jurisdiction**.   This Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of Illinois without reference to its choice of law rules.   This Agreement may not be amended, modified or supplemented except by written agreement of the Parties.   All claims arising under this Agreement will be asserted in and subject to the exclusive jurisdiction of the Illinois courts.  Additionally, with respect any suit of other action under or related to this Agreement, the Parties agree and consent to submit to the personal jurisdiction of the State of Illinois in any state or federal court of competent subject matter jurisdiction in the State of Illinois.

*Doc. 12* at 2 (emphasis original); *see also Doc. 4-2* at 5; *Doc. 9* at 2-3.

Plaintiffs are correct that, generally, "'New Mexico respects party autonomy; the law to be applied to a particular dispute may be chosen by the parties through a contractual choice-of-law provision.'" *Strausberg v. Laurel Healthcare Providers, LLC,* ___ P.3d ___, ___, No. 33,331, 2013 WL 3226753, at * 6  (N.M. Jun. 27, 2013) (quoting *Ferrell v. Allstate Ins. Co.,* 144 N.M. 405, 464, 188 P.3d 1156, 1215 (2008)); *see also Perez v. Qwest Corp.,* 883 F. Supp. 2d 1095, 1117, n.3 (D.N.M. 2012) ("As New Mexico is the forum state for . . . the District of New Mexico, the Court looks to New Mexico choice-of-law rules to determine which State's substantive law applies."). If the Agreement "has a valid choice-of-law provision, that law presumptively applies." *In re Pickel,* ___ B.R. ___, Bankr. No. 12–13262–TA, Adversary No. 12–1319–T, 2013 WL 2467716, at * 5 (Bankr. D.N.M. Jun. 7, 2013) (citing *Ferrell v. Allstate Ins. Co.,* 144 N.M. 405, 421–22, 188 P.3d 1156, 1172–73 (2008)).

However, District Judge Herrera has held in a materially indistinguishable case that New Mexico law governs extra-contractual claims such as fraud, and the contract choice of law governs contract claims such as breach. *See San Cristobal Acad., Inc. v. Transitional Living,* Civ. No. 10–1152 JH/WDS, 2012 WL 6605992 (D.N.M., Jul. 13, 2012). Plaintiffs' attorneys are aware of this decision, and their attempt to distinguish it is unpersuasive. *See Doc. 12* at 3.

In the choice of law provision in *San Cristobal* provided:  "This agreement shall be governed by and in accordance with the laws of the State of Arizona." *San Cristobal,* 2012 WL at *7.   The choice of law provision here provides: "This Agreement shall be

governed by and construed and enforced in accordance with the internal laws of the State of Illinois."  The two are identical save for the state.

Plaintiffs' counsel points to the sentence that requires "all claims" to be brought in Illinois courts and calls it a "[c]hoice of law provision."  *Doc. 12* at 3.  Being aware of the *San Cristobal* case, Plaintiffs' attorneys should have been aware that this characterization lacks any basis.  Judge Herrera addressed this very point in *San Cristobal,* and distinguished another decision from this District stating:

> Defendants offer the recent decision of *Mann v. Auto. Prot. Corp.,* 777 F. Supp. 2d 1234 (D.N.M. 2011) in support of their contrary position.  However, *Mann* concerns a **forum selection clause** rather than a choice-of-law provision like that at issue in the present case.  *See* 777 F.Supp.2d at 1243.  Thus, *Mann* involves a fundamentally different question than that at issue in the present case.  Whereas it would frustrate judicial economy to try contract-related actions in one forum and tort actions in another forum, nothing prevents a single court from applying the law of two different states in a single lawsuit.  The well-reasoned opinion of the Honorable Magistrate Judge Lourdes A. Martínez of this District in *Mann* is simply inapposite.

*San Cristobal,* 2012 WL at *7 (emphasis added).  The forum selection clause in *Mann,* as here, appeared in the section that also contained the choice of law clause, and the title to the section recognized the two concepts are separate.[5]

---

[5] The section in *Mann* provided:

XI. GOVERNING LAW; CONSENT TO JURISDICTION AND VENUE:

This Agreement shall be construed under and governed by the laws of the State of Georgia, and any legal action taken regarding this Agreement shall be filed in the State or Superior Courts of Fulton County, Georgia or the United States District Court, Northern District, Atlanta Division, and the parties consent to jurisdiction and venue in these courts.

*Mann,* 777 F. Supp. 2d at 1238.

Moreover, Plaintiffs' attorneys should be aware that different law can govern different types of claims arising out of contracts gone awry, since their firm conceded this very point in another case in this district just a few years ago.  *See Guidance Endodontics, LLC v. Dentsply Int'l, Inc.,* 708 F. Supp. 2d 1209, 1214 (D.N.M. 2010).  Judge Herrera distinguished the *Guidance* case precisely because the parties agreed that different law applied to different claims, and Judge Browning's analysis in *Guidance* reached did not reach any different conclusion from what the parties agreed upon.[6]

---

[6]   The parties agreed as follows:

> The Supply Agreement . . . provision states:  "This agreement shall be deemed to have been made and entered into pursuant to the laws of the State of Delaware. In the event of any dispute thereunder, this Agreement shall be governed by and construed according to the laws of the State of Delaware." . . . Guidance [whose counsel included the Modrall firm] argues that this provision—and therefore Delaware substantive law—applies to its claims for: (i) breach of contract (Count I); (ii) breach of the covenant of good faith and fair dealing (Count II); (iii) fraud (Count X); and (iv) rescission (Count XIII). . . .  The Defendants agree with this determination, and additionally argue that New Mexico law applies to Guidance's claims of:  (i) unfair competition (Count VI); (ii) violation of the New Mexico UPA (Count VII); and (iii) unlawful misappropriation (Count VIII), because Guidance's alleged "underlying misconduct is centered in New Mexico and New Mexico still applies the *lex loci delicti* rule in tort choice of law issues." . . . Guidance does not disagree with this point.
>
> * * * * *
>
> Neither party has argued that application of Delaware contract law would violate any New Mexico public policy, nor have they cited any authority to that effect.  In the absence of argument by counsel to the contrary, the Court is not willing to [so] find [and in footnote] no party argues that the choice-of-law provision is ambiguous.  Accordingly, the Court construes the provision to encompass all of the claims to which the parties agree that it applies.
>
> * * * * *
>
>     The Court has already determined in a prior opinion in this case [MOO dated 9/8/09, Doc. 303] that it believes the New Mexico U[nfair] P[ractices] A[ct] should generally be treated like a tort claim for choice-of-law purposes.
>
> * * * * *
>
>     Because the Court categorizes all three claims at issue as torts, it will apply *lex loci delicti* to them all.  The Court finds that much of the advertising conduct about which the Defendants complain occurred in New Mexico, and thus one could assume that many of the lost sales that are the result of the alleged advertising conduct occurred in New Mexico.  The Court therefore finds that New

All of the above decisions from this District are consistent in approach and result (given their different facts), and the Court finds them persuasive.  Accordingly, Plaintiffs' initial argument that the New Mexico statutory claim is subject to dismissal because Illinois law exclusively applies is unavailing.  Under the above decisions, Illinois law will govern Maxrep's "contract" claims and New Mexico law will govern the "tort" claims.

### B.  The Breach Of Good Faith/Fair Dealing Is A "Contract" Claim

Maxrep's fraud claims are properly characterized as "torts," and Plaintiffs do not argue otherwise.  *See Doc. 12* at 4-6; *see also, e.g., San Cristobal,* 2012 WL at *7 ("'New Mexico case law provides that "[f]raud is a tort, rather than a breach of contract, claim."'") (quoting *Heimann v. Kinder–Morgan CO2 Co., L.P.,* 140 N.M. 552, 558, 144 P.3d 111, 117 (N.M. Ct. App. 2006)).

In reply, Plaintiffs contend that the statutory claim "arises" out of the contract, and thus "sounds in contract."  *Doc. 12* at 6.  They fail to cite the *Guidance* case in this regard, which is directly on point, held squarely to the contrary, and one in which the Modrall firm participated as counsel for plaintiff.  *See supra* note 6.

The breach of the duty of good faith and fair dealing counterclaim stands on a different footing.

> New Mexico courts have recognized a cause of action
> for  breach  of  the  covenant  of  good  faith  and  fair  dealing

---

Mexico is a state in which some or all of the Defendants' alleged harm occurred.
Because New Mexico is the *lex loci delicti,* the Court will apply New Mexico substantive law to Counts VI, VII, and VIII.

*Guidance,* 708 F. Supp. 2d at 1222-24; *see also Guidance Endodontics, LLC v. Dentsply Int'l, Inc.,* 749 F. Supp. 2d 1235, 1274-77 (D.N.M. 2010) (quoting prior MOO holding statutory claim is characterized as tort, noting parties "continue to agree" that was correct analysis, noting that Court found no authority that draws its analytical approach into question, and result does not change even if statutory claim is based primarily on failure to provide "the quality or quantity of goods for which the parties contracted" due to "misleading statements").

> sounding in contract. "New Mexico courts have held that every contract imposes a duty of good faith and fair dealing on the parties with respect to the performance and enforcement of the terms of the contract." *Sanders v. FedEx Ground Package Sys., Inc.,* 144 N.M. 449, 452, 188 P.3d 1200, 1203 (2008) (citations omitted). "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." *Watson Truck & Supply Co., Inc. v. Males,* 111 N.M. 57, 60, 801 P.2d 639, 642 (1990) (citations omitted). "The implied covenant is aimed at making effective the agreement's promises[;] [t]hus, it is breached only when a party seeks to prevent the contract's performance or to withhold its benefits from the other party." *Sanders v. FedEx Ground Package Sys., Inc.,* 144 N.M. at 452 188 P.3d at 1203.

*Eoff v. N.M. Corrs. Dept.,* Nos. CIV 10–0598 JB/RHS, CIV 10–0599 JB/DJS, CIV 10–0600 JB/WDS, 2010 WL 5477679, at *9 (D.N.M. Dec. 20, 2010).

In the *Guidance* case, the plaintiffs took the position that the "breach of the covenant of god faith and fair dealing" claim was governed by the contract choice of law provision, and Judge Browning did not disagree. In other decisions, Judge Browning has held, consistent with New Mexico Supreme Court decisions, that such claims are properly characterized as "contract" under circumstances here, where no "special relationship" exists between the parties:

> New Mexico has recognized a cause of action for breach of the covenant of good faith and fair dealing sounds in contract. *See Bourgeous v. Horizon Healthcare Corp.,* 117 N.M. 434, 439, 872 P.2d 852, 857 (1994). The Supreme Court of New Mexico also explained that tort recovery for breach of the covenant of good faith and fair dealing would be permissible only where a special relationship existed, such as between an insurer and its insured. *See Bourgeous v. Horizon Healthcare Corp.,* 117 N.M. at 439, 872 P.2d at 857. The "relationship of insurer and insured is inherently unbalanced; the adhesive nature of insurance contracts places the insurer in a superior bargaining position." *Bourgeous v. Horizon Healthcare Corp.,* 117 N.M. at 439, 872 P.2d at 857 (citations omitted) (internal quotation marks

> omitted).  Similarly, the Court of Appeals of New Mexico held
> that "[t]he claim for breach of good faith and fair dealing
> sounds in contract, at least when no 'special relationship'
> such as that between an insured and insurer exists."
> *Heimann v. Kinder–Morgan CO2 Co.,* 140 N.M. 552, 558,
> 144 P.3d 111, 117 (Ct. App.2006).

*Back v. ConocoPhillps Co.,* No. CIV 12–0261 JB/WDS, 2012 WL 6846397, at *14

(D.N.M. Aug. 12, 2012); *see also Eoff,* 2010 WL at *10 ("the Plaintiffs' claims for breach

of implied covenant of good faith and fair dealing sound in contract, not in tort").

Accordingly, because the "good faith/fair dealing" claim should be characterized

as a "contract claim," Illinois law applies pursuant to the Agreement's choice of law

provision.

### C.  The Breach Of Good Faith/Fair Dealing Claim Should Be Dismissed

Maxrep takes no issue with the proposition that that Illinois does not recognize an

independent claim for breach of this sort.  *See Doc. 6* at  4; *Doc. 9* at 8; *Doc. 12* at 3-4.

Plaintiffs cite no Illinois authority for the proposition, however, the Court readily located

decisions that so hold.  Therefore, the Court should dismiss Count II of Maxrep's

counterclaim for failure to state a cognizable claim.[7]

### D.  Fraud Claims

The tort labeled as "fraudulent concealment" is known as "constructive fraud" in

New Mexico, and Maxrep's response notes the same.  *See Doc. 9* at 7 (citing *Snell v.*

---

[7] *See, e.g., Lagen v. United Cont'l Holdings, Inc.,* 2013 WL 375213, at * 5-6 (N.D. Ill., Jan. 31, 2013) ("The duty of good faith and fair dealing is an interpretative tool that assists the Court in interpreting the terms of the contract and the intent of the parties.  *See Cromeens, Holloman, Sibert, Inc. v. AB Volvo,* 349 F.3d 376, 395 (7th Cir. 2003).  While under Illinois law every contract contains the implied covenant of good faith and fair dealing, it is 'not generally recognized as an independent source of duties giving rise to a cause of action.'  *Voyles v. Sandia Mortg. Corp.,* 196 Ill. 2d 288, 256 Ill. Dec. 289, 751 N.E.2d 1126, 1131 (2001); *see also, APS Sports Collectibles, Inc. v. Sports Time, Inc.,* 299 F.3d 624, 628 (7th Cir. 2002). . . . Thus, the Court finds Count II of Plaintiff's Complaint fails to state a claim and dismisses it with prejudice.").

*Cornehl,* 81 N.M. 248, 249, 466 P.2d 94, 95 (1970)).  Maxrep's fraudulent

misrepresentation and fraudulent concealment claims largely duplicate the theory of

recovery under the claim subject to dismissal.

Plaintiffs argue that this claim should be dismissed because there are "no

allegations relating to any . . . special or fiduciary relationship between [Charter Fitness],

Vrdolyak, and Max[r]ep or Rodway giving rise to a duty to disclose."  *Doc. 12* at 6.  New

Mexico, however, does not require any such relationship for either constructive fraud or

fraudulent misrepresentation.

> New Mexico courts recognize constructive fraud,
> "which is stated to be, generally, a breach of a legal or
> equitable duty irrespective of the moral guilt of the fraud
> feasor, and it is not necessary that actual dishonesty of
> purpose nor intent to deceive exist."  *Snell v. Cornehl,* 81
> N.M. 248, 249, 466 P. 2d 94, 95 (1970) (citing *In re Trigg.* 46
> N.M. 96, 121 P.2d 152 (1942)).  "Constructive fraud may be
> established by circumstances."  *Snell v. Cornehl,* 81 N.M. at
> 249, 466 P.2d at 95 (citing *Frear v. Roberts,* 51 N.M. 137,
> 179 P.2d 998 (1947) (other citations omitted).  "A finding of
> constructive fraud ***need not be based upon a fiduciary
> relationship between the parties,*** as constructive fraud is
> defined as 'acts contrary to public policy, to sound morals, to
> the provisions of a statute, etc., however honest the intention
> with which they may have been performed.'"  *Golden Cone
> Concepts. Inc. v. Villa Linda Mall. Ltd.,* 113 N.M. 9, 13, 820
> P.2d 1323, 1327 (1991) (citations omitted).  "An action for
> constructive fraud is maintainable where there is a
> nondisclosure of material facts and the person charged with
> the constructive fraud had a duty to speak under existing
> circumstances."  *Barber's Super Markets. Inc. v. Stryker,* 84
> N .M. at 186, 500 P.2d 1304, 1309 (Ct. App.1972) (citing
> *Everett v. Gilliland,* 141 P.2d 326, 330–331 (N.M. 1943)).
> "Whether a duty exists is generally a question of law for the
> trial court to decide."  *Golden Cone Concepts, Inc. v. Villa
> Linda Mall, Ltd.,* 113 N.M. at 12, 820 P.2d at 1326 (citation
> omitted).  Superior knowledge will give rise to a duty to
> disclose.  *See Mountain Highlands. LLC v. Hendricks,* 2009
> WL 1300750, at *5 ("[S]uperior knowledge will give rise to a
> duty to disclose . . . .").  Superior knowledge can be

> knowledge peculiarly within a party's awareness. *See Golden Cone Concepts. Inc. v. Villa Linda Mall. Ltd.,* 113 N.M. at 12–13, 820 P.2d at 1326–27

*Bhandari v. VHA SW Comm. Health Corp.,* No. CIV 09–0932 JB/GBW, 2011 WL 1336512, at *17 (D.N.M. Mar. 30, 2011) (emphasis added).[8]

The elements for a cause of action for fraudulent misrepresentation in New Mexico are:  (1) misrepresentation of fact; (2) either knowledge of falsity or recklessness by the party who made the misrepresentation; (3) intent to deceive and to induce reliance on the misrepresentation; and (4) detrimental reliance.  *Spencer v. Barber,* 299 P.3d 388, 402 (N.M. 2013) (citing *Williams v. Stewart,* 137 N.M. 420, 429, 112 P.3d 281, 290 (N.M. App. 2005)).  "[U]nder New Mexico law, a fiduciary relationship is not an element of fraudulent misrepresentation."  *Id.* (citing *Williams v. Stewart,* 137 N.M. 420, 429, 112 P.3d 281, 290 (N.M. App. 2005)).[9]

---

[8]   *See also, e.g., Parker v. E.I. DuPont de Nemours & Co., Inc.,* 121 N.M. 120, 133, 909 P.2d 1, 14 (N.M. App. 1995) ("In order to establish a cause of action based on a claim of constructive fraud, Plaintiffs must prove 'a breach of a legal or equitable duty which the law declares fraudulent because of its tendency to deceive others.'") (quoting *Barber's Super Markets,* 84 N.M. at 186, 500 P.2d at 1309); *Archuleta v. Kopp,*  90 N.M. 273, 276, 562 P.2d 834, 837 (N.M. App. 1977) ("defendant contends that there is no such thing as innocent misrepresentation or constructive fraud in the State of New Mexico.  This clearly is not the law.  *Snell* . . . and *Barber's* . . . stand for the proposition that constructive fraud is a breach of a legal or equitable duty, irrespective of the moral guilt of the fraud-feasor.  It is not necessary to prove dishonesty of purpose nor intent to deceive to maintain a cause of action for constructive fraud.  This has been the law in New Mexico since 1853, when the New Mexico Supreme Court, stated: '. . . acts contrary to public policy, to sound morals, to the provisions of a statute, etc., however honest the intention with which they may have been performed, are deemed constructive frauds, or frauds in law, and are absolutely void.' *Leitensdorfer v. Webb,* 1 N.M. (Gild.) 34, 53 (1853), *affirmed* 61 U.S. (20 How.) 176, 15 L.Ed. 891 (1858).").

[9]   In arguing that Illinois law requires a fiduciary or special relationship for fraudulent concealment, Plaintiffs cite *S2 Automation LLC v. Micron Tech., Inc.,* 281 F.R.D. 487 (D.N.M. 2012) for the proposition that the "Tenth Circuit has imposed similar requirements in the [R]ule 9(b) context for alleged fraud arising from a failure to disclose." *Doc. 6* at 6.  In reply, Plaintiffs cite *S2 Automation* or the proposition that New Mexico law imposes the "relationship" element for a cause of action based on fraudulent concealment. *See Doc. 12* at 5-6.  However, *2 Automation* does not mention anything about fiduciary relationship for a cause of action based

Federal Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. P. (9)(b).  To satisfy the rule, the allegations "must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"  *Heavy Petroleum Partners, LLC v. Atkins,* 457 F. App'x 735, 742-43 (10th Cir. 2012) (internal quotations and citations to *Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1252 (10th Cir. 1997) and *Lawrence Nat'l Bank v. Edmonds,* 924 F.2d 176, 180 (10th Cir. 1991), omitted).

Thus, in *Heavy Petroleum,* simply stating that "Defendants have been damaged by their reliance upon the false, fraudulent, intentionally misleading statements and representations of partners, employees and agents of plaintiffs . . . that plaintiff . . . was skilled, experienced and qualified to conduct heavy petroleum extraction on defendants' lease with the use of secondary recovery steam injection technology" is not sufficient. *Id.*  In contrast, Maxrep's counterclaim does not suffer from this sort of conclusory deficiency and covers all of the bases.  Plaintiffs do not seriously argue otherwise.  *See Docs. 6, 12.*  The counterclaim sets forth in detail what Privitt said, when he said it, and the consequences to Rodway for relying on these affirmative statements.  The

---

on affirmative fraudulent misrepresentations or based on a cause of action entitled "fraudulent concealment."  Indeed, Judge Browning, who expressly pointed out in *Bhandari* that relationship is not required, is also the author of *S2 Automation.*  Maxrep's alleges that Charter Fitness and Vrdolyak, who "director or otherwise controlled [Charter Fitness], had a "legal obligation to report and pay . . . taxes" and a "duty to disclose the outstanding tax liability."  *Doc. 4* at 20.  The patently "superior knowledge" raised by these allegations is sufficient to give rise to the duty under the decisions cited in *Bhandari,* above.  In contrast, in *S2 Automation,* the dispute was over the value of inventory, but there the parties had met, conducted inventory, and exchanged information. 281 F.R.D. at 495.  The issue was what "additional information" defendant had an "obligation to disclose" beyond that already provided.  *Id.* at 496.  Yet, the allegations did not indicate "what conduct was fraudulent and how the conduct was fraudulent."  *Id.* at 495.

counterclaim notes that the Charter Fitness tax liability discovered shortly after the sale was from 2009, which well pre-dates the 2011 negotiations.   *See supra* note 9.

Corporations "'act . . . through officers, employees, and agents.'"  *Bhandari,* 2011 WL at *37  (quoting *Guidance,* 707 F. Supp. 2d at 1280).  The pleadings illustrate that there is going to be a question of fact about Privitt's capacity during negotiations for the sale, when his alleged affirmative misrepresentations took place.  For example, while Plaintiffs' complaint asserts that Privitt was the "Manager of Maxrep" without mentioning a time frame, *Doc. 4-1* at 2, it appears from the subsequent counterclaim allegations that Privitt's association with Maxrep was based on Privitt's continued relationship with the facilities **after** the sale.  Maxrep's answer "affirmatively alleges" that **"prior to** July, 2011, . . . Privitt . . . was an employee or agent of the CF Entities."  *Doc. 4* at 2 (emphasis added).  Likewise, paragraph 11 of the Maxrep's counterclaim reiterates the "[p]rior to July, 2011 and at all times material to the claims in this Counterclaim . . . Privitt . . . was employed by [Charter Fitness] in Albuquerque as a manager [and] represented [Charter Fitness] in their dealings with Maxrep and Rodway, and acted as agent on behalf of [Charter Fitness]."  *Id.* at 11.  Prititt is not the only actor in the allegations.  Maxrep also alleges that Charter and Vrdolyak "caused to be provided or acquiesced in the provisions of the Projections [from Privitt] to Maxrep and Rodway," and "either knew that [Privitt's] representations were false at the time they were made or made them recklessly."  *Doc. 4* at 18.

Plaintiffs' argument for dismissing the fraudulent misrepresentation claim boils down to an argument that the counterclaim does not plead any facts to establish Charter Fitness knew the financial information Privitt supplied was incorrect.  *See, e.g.,*

*Doc. 6* at 4-5.  This argument ignores allegations that corporate officer Vrdolyak participated in transferring the projections and knew of their content, but Plaintiffs maintain he did not know what Privitt told Rodway and Maxrep and that Defendants have not alleged any "facts" of Privitt's "agency relationship" with Charter Fitness.  *See Doc. 6* at 4-5; *Doc. 12* at 4, 5.

However, the standard on a motion to dismiss accepts as true Maxrep's well-pleaded factual allegations that Privitt held the status of an employee or agent during negotiations, and that ends the inquiry.

More fundamentally, Rule 9(b) specifically provides that state of mind allegations can be made generally.  "True to the rule's straightforward language," the Tenth Circuit holds that the rule "requires only the identification of the circumstances constituting fraud, and that it does not require any particularity in connection with an averment of intent, knowledge or condition of mind."  *Schwartz,* 124 F.3d at 1252

Wherefore,

**IT IS HEREBY RECOMMENDED** that Plaintiffs' motion to dismiss *(Doc. 6)* be granted in part, Count II of the Maxrep's Counterclaim *(Doc. 4 at 16)* be dismissed with prejudice, and that the motion otherwise be denied.

**IT IS FURTHER RECOMMENDED** that in the event these findings are adopted, the Court summarily rule on the identical issues raised in the unripe motion.  *See Doc. 23.*

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A**

party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE